## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TEXAS



| | |
|---|---|
| **CRAIG CUNNINGHAM,** <br> **Plaintiff,** <br><br> **v.** <br><br> Vehicle Protection Specialists, LLC aka <br> Vehicle Service Center, Daniel Laurent, <br> Sunpath, Ltd. corp., dba Sunpath LTD Corp <br> of Delaware, Adam Marino, Wesco Insurance <br> Company, National Car Care Center, Inc., <br> Omnisure Group, LLC <br><br> **Defendant** | § <br> § <br> § <br> § <br> § **4:19cv812-ALM-CAN** <br> § <br> § <br> § <br> § <br><br><br> **FILED** <br><br> NOV 0 7 2019 <br> Clerk, U.S. District Court <br> Texas Eastern |

### Plaintiff's Original Complaint

### Parties

1. The Plaintiff is Craig Cunningham and natural person and was present in Texas for all calls in this case in Collin County.

2. The Sunpath LTD is a Texas corporation that can be served via Registered agent National Registered Agents, Inc., 1999 Bryan St., Ste 900 Dallas, Tx 75201

3. Vehicle Protection Specialists, LLC is a Nevada corporation and can be served via registered agent Business Filings Incorporated, 701 S. Carson St., ste 200 carson City, NV 89701 or 818 West Seventh Street, ste 930 Los Angeles, CA 90017.

4. Daniel Laurent is a natural person and can be served at 9 MacArthur Place unit 2202, Irvine, CA 92603 and is a corporate officer of Vehicle Protection Specialists, LLC.

5. Wesco Insurance Company is a corporation that can be served at 59 Maiden Lane,

43rd Floor New York, New York 10038.

6. National Car Care Center, Inc., is a corporation that can be served via registered agent Rocket Lawyer, Inc. 55 Second Street, 7th Floor San Francisco, CA 94105.

7. Adam Marino is a corporate officer of National Car Care Center, Inc., and can be served at 12818 Tiara St., Valley Village, CA 91607.

8. Omnisure Group, LLC, Jeffrey Hechtman 500 W. Madison St. Ste 3700, Chicago, IL 60661.

9. John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

**JURISDICTION AND VENUE**

10. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

11. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and the sell goods and services to Texas residents, including the Plaintiff. Sunpath, LTD is a Texas corporation operating in Texas.

12. This Court has specific personal jurisdiction over the defendants because the calls at issue were sent by or on behalf of the defendants.

13. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. residing in the Eastern District of Texas when he recieved a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

14. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

15. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

16. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

17. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

18. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

19. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

20. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

21. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

22. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

23. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

24. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

25. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

26. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

27. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the

TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053

28. The Texas Business and Commerce code has an analogus portion that is related to the TCPA and was violated in this case.

29. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### FACTUAL ALLEGATIONS

30. The Plaintiff has recieved multiple calls from multiple different entities selling the extended car warranty services of Sunpath and several related entites by mulitple agents of Sunpath, LTD.

### Alleged calls to the Plaintiff and violations of 47 USC 227(b)

31. Mr. Cunningham received multiple calls from a variety of spoofed caller ID's that contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls were on behalf of each of the defendants in this case offering their products/services as a result of the calls. The calls had a delay of 3-4 seconds of dead air before the pre-recorded message began indicating the calls were initiated using an ATDS. None of the calls were related to any emergency purpose.

32. The calls resulted in multiple policies being offered to the Plaintiff by Sunpath. Policies MPM254930 by Vehicle Service Center on or about 2/27/2019, SAM131561 by National Car care center on or about 9/22/2016, and MPM255368 on or about March 13, 2019. Each and every call was to the Plaintiff's cell phone 615-212-9191

### Vehicle Protection Specialists, LLC aka Vehicle Service Center Calls

33. The Plaintiff recieved at least one call on 2/27/2019 to his cell phone 615-212-9191 which resulted in a policy MPM 254930 being sold. The Plaintiff should be able to ascertain to total number of calls through discovery. The policy indicates that the administrator is Sunpath, LTD, was sold by Vehicle protection specialists, LLC aka Vehicle Service Center. Additional services offered in the contract were from the Wesco Insurance Company as well.

34. The Plaintiff recieved multiple calls on 3/22/2019 from 615-307-8872 at least 3 times, 3/21/2019 from 615-375,9832, 3 times, on 3/14/2019 from 615-307-8872, 2/27/2019 from 615-307-8872, 2/13/2019 from 615-876-3612, 2/4/2019 from 615-412-5506, 1/31/2019 from 615-307-8872, and 1/30/2019 from 615-375-9832 totaling at least 12 additional calls from Vehicle Protection Specialists, LLC that resulted in a policy MPM255368 being issued by Sunpath.

35. The calls had an audible bloop tone which is indicative of a vicidial automated telephone dialing system when connecting.

### National Car Care Center Calls

36. On or about 9/22/2016, the Plaintiff recieved at least one telemarketing call by or on behalf of National Car Care Center selling auto warranty policies for the benefit of Sunpath and Wesco Insurance Company and Omnisure Group, LLC.

37. There were at least 5 calls from 901-334-1684 to 615-212-9191. These calls also had an audible "bloop" tone when the call connected. This is indicative of a vicidial automated telephone dialing system.

38. These defendants clearly violated the DPPA as well by asking the Plaintiff about a Chevy Silverado and quoting the mileage which can only be obtained through the

DMV. These actions violated 18 USC 2724 and entitle the Plaintiff to $2500
minimum in statutory damages and punitive damages potentially as well.

39. Adam Marino was personally involved in the selection of the telemarketers and use of
automated dialing to sell his services. He contracted with the vendors and regularly
made payments to 3rd party telemarketers or dialing services.

**Knowing and  Willful Violations of Telemarketing Regulations** 47 USC 227(c)(5)

40.  Mr. Cunningham asked for an internal do-not-call policy

41. The Defendants knowingly violated the TCPA by initiating automated calls with pre-
recorded messages to the Plaintiff without maintaining an internal do not call policy
in violation of 47 CFR 64.1200(d).

42. The Defendants never sent Mr. Cunningham any do-not-call policy in violation of 47
CFR 64.1200(d)(1)

43.  The Defendants placed telemarketing calls without having a written do-not-call
policy in place to Mr. Cunningham  in violation of 47 CFR 64.1200(d)(1)

44.  The Defendants placed telemarketing calls to the Plaintiff without training their
agents engaged in telemarketing on the existence and use of any do-not-call list in
violation of 47 CFR 64.1200(d)(2)

45. The defendants placed telemarketing calls without identifying themselves or the party
they were calling on behalf of in violation of 47 CFR 64.1200(d)(4)

**Adam Marino's  Control over the telemarketing calls Robocalling and
Telemarketing**

46.  At all times relevant to the claims alleged herein, Adam Marino was a corporate
officer and executive in charge . Each and every call was placed on behalf of the

corporate entites owned by Adam Marino.

47. Adam Marino was aware that calls were being placed by or on behalf of his company, via automated, telemarketing calls en masse to people, including Plaintiff.

48. National Car Care Center, Inc's senior-most executive, Adam Marino had the power to stop these spam campaigns.

49. As National Car Care Center, Inc.'s , senior-most executive, Adam Marino had the power to fire the managers and employees taking part of the day-to-day operations of these illegal robocalling operations.

50. Adam Marino signed a contract with currently unknown telemarketers toServices in order to sell his vehicle service plans services as part of the telemarketing campaign.

51. Adam Marino directed 3rd party telemarketers to place calls to consumers across the country, including Texas.

52. Instead, Adam Marino allowed the calls to continue and the responsible managers to keep their jobs—despite his knowledge of frequent do-not-call complaints from recipients of these messages, including the Plaintiff.

### Daniel Laurent's control over the telemarketing calls

53. At all times relevant to the claims alleged herein, Daniel Laurent was the corporate officer and executive in charge of Vehicle Protection Specialists, LLC.

54. Daniel Laurent were aware that calls were being placed by or on behalf of his company, via automated, telemarketing calls en masse to people, including Plaintiff.

55. As the senior-most executives, Daniel Laurent had the power to stop these spam campaigns.

56. As the senior-most executives, Daniel Laurent had the power to fire the managers and

employees taking part of the day-to-day operations of these illegal robocalling
operations.

57. The senior-most executives, Daniel Laurent signed a contract with telemarketers in
order to make illegal telemarketing calls.

58. The senior-most executive, Daniel Laurent directed telemarketers to place calls to
consumers across the country, including Texas.

### The Plaintiff's cell phone is a residential number

59. The calls were to the Plaintiff's cellular phone ***-***-9191, which is the Plaintiff's
personal cell phone that he uses for personal, family, and household use. The Plaintiff
maintains no landline phones at his residence and has not done so for at least 10 years
and primarily relies on cellular phones to communicate with friends and family. The
Plaintiff also uses his cell phone for navigation purposes, sending and receiving
emails, timing food when cooking, and sending and receiving text messages. The
Plaintiff further has his cell phone registered in his personal name, pays the cell phone
from his personal accounts, and the phone is not primarily used for any business
purpose.

### Violations of the Texas Business and Commerce Code 305.053

60. The actions of the Defendants violated the Texas Business and Commerce Code
305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The
calls by or on behalf of the defendants violated Texas law by placing calls with a pre-
recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d)
and 47 USC 227(d)(3) and 47 USC 227(e).

61. The calls by the defendants violated Texas law by spoofing the caller ID's per 47

USC 227(e) which in turn violates the Texas statute.

## I.   FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1.      Mr. Cunningham realleges and incorporates by reference each and every

allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or

agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making

non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number

without his prior express written consent.

3.      Mr. Cunningham is entitled to an award of at least $500 in damages for

each such violation. 47 U.S.C. § 227(b)(3)(B).

4.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for

each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.      Mr. Cunningham also seeks a permanent injunction prohibiting

Defendants and their affiliates and agents from making non-emergency telemarketing

robocalls to cellular telephone numbers without the prior express written consent of the

called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6.    Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a.    a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

b.    training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

c.    in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8.    Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9.    Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

10.     Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11.     Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13.     Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14.     Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## IV. THIRD CLAIM FOR RELIEF: Violations of DPPA 18 USC 2724

15.     Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

16.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **DPPA, 18 USC 2724**, by improperly using personal information gained from a department of motor vehicles for solicitaiton purposes

17.     Mr. Cunningham is entitled to an award of at least $2500 in damages for each such violation, per 18 USC 2724 and punitive damages

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against the Defendants  jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.     An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 30 calls.

E.    An award of $1,500 in statutory damages arising from violations of the

Texas Business and Commerce code 305.053

F.    An award of $2500 in statutory damages for violations of the DPPA

G.    Punitive damages in the amount of $25,000

H.    An award to Mr. Cunningham of damages, as allowed by law under the

TCPA;

I.    An award to Mr. Cunningham of interest, costs and attorneys' fees, as

allowed by law and equity

J.    Such further relief as the Court deems necessary, just, and proper.

Craig Cunningham
Plaintiff,                    11/7/2019

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075